UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
PETER INNOCENT,                                              :
                                                             :
                                  Petitioner,   :
                                                             :      MEMORANDUM & ORDER
                -against-                          :
                                                             :      19-CV-1496 (ENV)
WILLIAM A. LEE, Superintendent,                              :
                                                             :
                                Respondent.   :
------------------------------------------------------------- x

VITALIANO, D.J.

      Proceeding *pro se*, Peter Innocent filed this petition seeking a writ of *habeas corpus*, pursuant to 28 U.S.C. § 2245. Dkt.1 ("Pet."). For the reasons set forth below, the writ is denied and the petition dismissed.

## Background[1]

      On the evening of December 27, 2008, acting on a tip from his girlfriend, Misha Louis, Innocent and three codefendants attempted to rob Robert Carnival at his car dealership in Brooklyn. Dkt. 7 at 1-2 ("Resp't Aff."). Once at the dealership, Innocent and the others displayed guns to Carnival. One of his codefendants, Aaron Adderly, shot Carnival in the back and killed him. *Id.* at 2. Innocent was charged with murder in the second degree, six counts of attempted robbery in the first degree, and criminal possession of a weapon in the second degree. *Id.*

      Petitioner went to trial in Supreme Court, Kings County, but, on May 11, 2011, a mistrial was declared after a juror had difficulty understanding English during the jury's deliberations.

---

[1] Since Innocent was convicted, the facts are recited in the light most favorable to the verdict. *Garbutt v. Conway*, 668 F.3d 79, 80 (2d Cir. 2012).

*Id.* The People's case having unfolded before his eyes, that very day Innocent struck a plea deal that required his cooperation in the prosecution of Louis. *Id.* As the cooperation agreement required him to do, Innocent pled guilty to manslaughter in the first degree and murder in the second degree and was required to testify against Louis at her trial. *Id.* In exchange for his cooperation, the People agreed to dismiss the murder charge and that a sentence of 18 years would be imposed on the manslaughter count. *Id.* He further agreed to waive his right to appeal. Dkt. 7-1 at 6 ("Plea Tr.").[2] At the end of the plea allocution, the trial court requested that the prosecution put together a document detailing the terms of the cooperation agreement. *Id.* at 7-9.

In an apparent case of buyer's regret, on August 16, 2011, Innocent filed a motion to withdraw his plea on the grounds that it was not knowing, voluntary and intelligent, and that he was not guilty. Resp't Aff. at 2. On November 3, 2011, without conducting a hearing, the trial court denied his motion as meritless. *Id.* His motion now lost, on that very same day, the trial court gave Innocent one last opportunity to comply with the cooperation agreement and testify against Louis. *Id.* at 3; dkt. 7-3 at 4-6 ("Sentencing Tr."). When he again refused to testify against Louis at her trial, the court dismissed the manslaughter charge and sentenced Innocent to 20 years to life in prison on the murder charge. Resp't Aff. at 3.

On April 11, 2015, Innocent appealed his conviction to the Appellate Division, Second Department, on two grounds: (1) the waiver of his right to appeal was invalid; and (2) the trial court improvidently exercised its discretion in denying the application to withdraw his guilty

---

[2] The transcript of the plea allocution reflected a standard of inquiry by the trial court designed to establish that Innocent's plea was knowing and voluntary. The transcript indicates that he was informed by the court that, by taking the plea, he was giving up some of his constitutional rights. Plea Tr. at 4-6. Further, as documented in the transcript, Innocent consulted with his attorney before pleading guilty, and told the court that he acknowledged that he was giving up constitutional rights, and that he understood the requirements of the deal. *Id.*

plea. *Id.* On October 7, 2017, the Second Department unanimously affirmed Innocent's conviction, *People v. Innocent*, 132 A.D.3d 696 (2015), while also holding that Innocent's waiver of his right to appeal was invalid. *Id.* at 696. The New York Court of Appeals, on January 13, 2016, denied Innocent leave to appeal. *People v. Innocent*, 26 N.Y.3d 1109, 47 N.E.3d 98, 26 N.Y.S.3d 768 (2016).

On July 20, 2016, Petitioner, appearing *pro se*, moved in the trial court pursuant to Criminal Procedure Law ("CPL") § 440.10(1)(h) to vacate his conviction on multiple grounds. Resp't Aff. at 4. In the motion, he appeared to assert that he had been denied Due Process when the State failed to abide by its promise to reduce the plea agreement to writing before sentencing, rendering his sentence premature. *See id.*; *see also* dkt. 7-8 at 4-6. Innocent further alleged that his Sixth Amendment right to effective assistance of counsel was violated when his trial attorney failed to advise him on the meaning of sealing the minutes, and again when his attorney at sentencing failed to object to the "premature sentencing". *See* Resp't Aff. at 4; *see also* dkt. 7-8 at 7. On January 12, 2017, Supreme Court denied Innocent's CPL § 440.10 motion as meritless. Resp't Aff. at 4. On November 27, 2017, permission to appeal Supreme Court's denial of the CPL § 440.10 motion was denied by the Second Department. *Id.*

In the instant petition Innocent raises all issues that were advanced on his direct appeal,

3

as well as all those raised in his CPL § 440.10 motion.[3]  Pet. at 12-15.

## Legal Standard

Post-conviction federal *habeas* relief is governed by the overarching reach of the Antiterrorism and Effective Death Penalty Act of 1996, 28 U.S.C. § 2254 ("AEDPA").  Generally, AEDPA gives deference to state courts applying controlling precedents of the U.S. Supreme Court to resolve federal constitutional claims raised by state prisoners.  *See Gutierrez v. McGinnis*, 389 F.3d 300, 304 (2d Cir. 2004) (describing this standard as "AEDPA deference").  This deferential review is accorded to any state court decision disposing of a state prisoner's federal claim on the merits, regardless of whether that court gives reasons for its determination or refers to federal law in its decision.  *Harrington v. Richter*, 562 U.S. 86, 98-99, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011).

That such deference is to be shown is hardly surprising.  Circumscription of the power of district courts to grant *habeas* relief to state prisoners is exactly what Congress intended.  "Section 2254(d) reflects the view [of Congress] that *habeas corpus* is a guard against extreme malfunctions in the state criminal justice systems, not a substitute for ordinary error correction through appeal."

---

[3] Even crediting time for the prison mailbox rule, *see Hardy v. Conway*, 162 F.App'x 61, 62 (2d Cir. 2006), Innocent's petition seems, on its face, to be untimely.  Assuming for the purpose of argument that the petition is untimely, the running of limitations is an affirmative defense which, ordinarily, is lost if not raised by the respondent.  The respondent here has not raised this affirmative defense or given notice of in her opposition papers.  With the issue obscured below the surface, it would not be in the interests of justice for the court to raise it now on its own motion.  *See Jamison v. Auburn Corr. Facility*, No. 10-CV-3440 (MKB), 2015 WL 8770079, at *5 (E.D.N.Y. Dec. 14, 2015) (holding, where the respondent failed to raise untimeliness in its response even though the petition was filed more than two months late, justice was best served by reviewing the petition on the merits).  In such circumstances, the Court will deem Innocent's application for federal Habeas relief to have been timely filed and will make its ruling as if it had been.

*Harrington*, 562 U.S. at 102-03 (citation and internal quotations omitted). With its mission of targeting extreme malfunctions in a state criminal proceeding, AEDPA review "demands that state-court decisions be given the benefit of the doubt." *Hardy v. Cross*, 565 U.S. 65, 66, 132 S. Ct. 490, 181 L. Ed. 2d 468 (2011) (citation omitted). Where AEDPA deference applies, "[a] state court's findings of fact are 'presumed to be correct' unless rebutted 'by clear and convincing evidence.'" *Drake v. Portuondo*, 553 F.3d 230, 239 (2d Cir. 2009) (quoting 28 U.S.C. § 2254(e)(1)).

Given these ground rules, *habeas* jurisprudence is tightly confined. In that regard, a state court decision is "contrary to clearly established federal law" if it contradicts relevant Supreme Court precedent or arrives at a different conclusion based on "materially indistinguishable" facts. *Williams v. Taylor*, 529 U.S. 362, 405-6, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000). A state court decision is classified as one resting on an "unreasonable application" of federal law if it "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413. Even erroneous state court decisions, then, if deemed reasonable, will survive *habeas* review. *Id.* at 411.

But, there is a caution: the state court decision need not be "so far off the mark as to suggest judicial incompetence" before *habeas* relief may be granted. *Francis S. v. Stone*, 221 F.3d 100, 111 (2d Cir. 2000) (citation omitted). "A federal court may reverse a state court ruling only where it was 'so lacking in justification that there was . . . [no] possibility for fairminded disagreement.'" *Vega v. Walsh*, 669 F.3d 123, 126 (2d Cir. 2012) (quoting *Harrington*, 562 U.S. at 103). Still, as the Supreme Court has underscored, if the AEDPA "standard is difficult to meet [before federal *habeas* relief may be awarded]– and it is – that is because it was meant to be." *Burt v. Titlow*, 571 U.S. 12, 20, 134 S. Ct. 10, 187 L. Ed. 2d 348 (2013) (citation and internal quotations omitted).

Moreover, even if the district court is convinced to a moral certainty that the state court erroneously determined an issue purely of state law, the district court is without power to grant habeas relief to rectify it. *See* 28 U.S.C. § 2254(d)(1); *Estelle v. McGuire*, 502 U.S. 62, 67-68, 112 S. Ct. 475, 116 L. Ed. 2d 385 (1991) ("[I]t is not the province of a federal *habeas* court to reexamine state-court determinations on state-law questions.").

Discussion

I.      Withdrawal of the Guilty Plea

First,[4] petitioner alleges that the trial court improvidently exercised its discretion in denying his motion to withdraw his plea. He contends that the decision was in error because his plea was not given voluntarily, but rather was coerced by his attorney, who told Innocent he would only represent him at a second trial if paid an additional $10,000. Further, Innocent claims that his Due Process rights were violated when the court failed to hold an evidentiary hearing before denying his motion to withdraw his plea. This claim was properly presented to the Second Department, was considered by that court on the merits, was fully exhausted, and is to be decided here on the merits. The state court decision is entitled to AEDPA deference.

Controlling precedent of the United States Supreme Court requires courts to assess "whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant." *North Carolina v. Alford*, 400 U.S. 25, 31, 91 S.Ct. 160, 164, 27

---

[4] Innocent's opening salvo rested on his lingering lament about the "waiver of appeal" requirement of his cooperation agreement. The Appellate Division found that provision to be invalid without prejudice to his other arguments regarding the plea he had entered and the trial court's denial of his motion to withdraw it. The invalid waiver claim is now moot and is dismissed on that ground.

L.Ed.2d. 162 (1970) (citations omitted).  Whether a plea has met this standard, "can be determined only by considering all of the relevant circumstances surrounding it." *Brady v. United States*, 397 U.S. 742, 749, 90 S.Ct. 1463, 1469, 25 L.Ed.2d 747 (1970) (citations omitted).  Applying this controlling precedent to the instant facts, nothing in the record or in petitioner's showing suggests that the decision by the state court denying Innocent's motion to withdraw his guilty plea was in any way contrary to controlling federal precedent, much less that the state court decision is not entitled to AEDPA deference.

Innocent offers no "clear and convincing evidence" that allows a reviewing federal district court to upend the state courts' findings.  *Drake*, 553 F.3d at 239.  Indeed, quite to the contrary, any fair review of the minutes of the allocution makes abundantly clear that Innocent acted voluntarily and with knowledge.  For example, the transcript indicates that both the judge and Innocent's attorney clearly described what rights Innocent would be giving up should he take the plea, and both made certain that Innocent understood the terms of the plea agreement before he accepted it.  Plea Tr. at 5-7.  Innocent's attorney consulted with Innocent and the judge gave him time to consult with his family before ultimately making his decision.  *Id.* at 7.  Innocent also acknowledged, under oath, that he was entering the plea of his own free will, directly contradicting his current contention that he was coerced by his attorney.  *Id.*  At bottom, Innocent offers nothing, much less clear and convincing evidence, that would undermine the deference owed to these factual findings made by and relied upon by the state courts.

Likewise, and certainly most dispositively, the trial court's decision to rule on Innocent's motion to withdraw a plea it had already found to be constitutionally valid without conducting a hearing is not a violation of "clearly established federal law."  *See Williams*, 529 U.S. at 404-05.  The Second Circuit has held that "[b]oth federal and state precedent have established that a

defendant is not entitled as a matter of right to an evidentiary hearing on a motion to withdraw a guilty plea." *Hines v. Miller*, 318 F.3d 157, 162 (2d Cir. 2003) (citations omitted). For these reasons, this claim fails and is dismissed.

II.  "Premature Sentencing"

Innocent appears to claim in his petition to this Court, as he did in his CPL § 440.10 motion, that the prosecution's failure to memorialize the plea agreement in writing as the trial court requested meant that the plea agreement was never finalized. Clinging to the prosecution's failure to follow the trial court's instruction to separately memorialize the cooperation agreement beyond the transcript its allocation, Innocent argues that the failure of the prosecution to "submit a written cooperative agreement" rendered his guilty plea incomplete and invalid, and that the trial court's imposition of sentence upon it is a violation of Due Process. Pet. at 13. Innocent's argument was rejected by Supreme Court as meritless and the Second Department denied leave to appeal from the denial of the CPL § 440.10 motion in which he advanced this argument.

Again, as a matter of federal constitutional law, the only requirement for a valid plea is for the plea to be entered knowingly, voluntarily, and intelligently. *See Alford*, 400 U.S. at 31; *Brady*, 397 U.S. at 758. When a plea is not "voluntary and knowing, it has been obtained in violation of due process and is therefore void." *McCarthy v. United States*, 394 U.S. 459, 466, 89 S.Ct. 1166, 1171, 22 L.Ed.2d 418 (1969). As the trial court correctly observed, while it would be good practice to reduce a plea agreement to writing, the prosecution's failure to do so here did not and cannot render the plea invalid.

Clearly, the determination by the state court that the plea was completed, and therefore the sentence valid, was not "contrary to clearly established federal law," nor was the decision based on an "unreasonable application" of the law. *See Williams*, 529 U.S. at 404-05. Further,

Innocent fails to offer "clear and convincing evidence" challenging the adequacy of the state court's findings. *See Drake*, 553 F.3d at 239. That determination is entitled to AEDPA deference. Innocent's Due Process claim does not compel the issuance of the writ.

III.   Ineffective Assistance of Counsel

Standard fare in almost every habeas application is the claim that, at one or more times during trial or on appeal, the petitioner was denied the effective assistance of legal counsel. On his application, Innocent alleges that his Sixth Amendment rights were violated when his trial attorney failed to advise him on the meaning of sealing the plea, and again when his attorney at sentencing failed to object to the "premature sentence" before it was given. Resp't Aff. at 19.

To establish a federal habeas ineffective assistance of counsel claim, petitioner must show (1) "that counsel's performance was deficient" and (2) that the deficient performance "prejudiced the defense." *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064, 80 L. Ed. 2d 674 (1984). Both elements must be satisfied to reverse a conviction. *Id*. Performance is deficient when it is so inadequate "that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." *Id*. Conversely, an attorney satisfies the Sixth Amendment requirements by providing "reasonably effective assistance" considering all of the circumstances. *Trapnell v. United States*, 725 F.2d 149, at 151-52 (2d Cir. 1983) (citation omitted). Courts must assess attorney performance with "a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Strickland*, 466 U.S. at 689.

Attorney performance on the first prong is assessed "at the time of counsel's conduct," *id*. at 659, without the benefit of hindsight. *Lockhart v. Fretwell*, 506 U.S. 364, 372, 113 S. Ct. 838, 844, 122 L. Ed. 2d 180 (1993). A deficient performance is only prejudicial when there is "a

9

reasonable probability that the outcome of the proceeding would have been different" absent counsel's error or action. *Mayo v. Henderson*, 13 F.3d 528, 534 (2d Cir. 1994) (citation omitted). Unlike the deficiency prong, the prejudice prong "may be made with the benefit of hindsight." *Id*.

Innocent proffers no evidence showing that, contrary to the trial court's findings, he was prejudiced by the actions of either counsel due to any alleged deficiencies. *Strickland*, 466 U.S. at 687. Not only is there no "reasonable probability" that the outcome would have been different if not for counsels' errors, there is also no evidence suggesting that any error, whatsoever, was made by either counsel. As the trial court noted in its denial of petitioner's CPL § 440.10 motion, "[a]lthough trial counsel does not appear to have explained to defendant . . . the meaning of sealing the plea," nothing suggests, and Innocent makes no attempt to show, that counsel's failure to do so changed the outcome of the proceedings. Dkt. 7-10 at 3; *see Williams v. United States*, 16-CV-596 (CM), 2017 WL 532469 at *6 (S.D.N.Y. Feb. 3, 2017) (holding that, absent a showing from defendant that he would have chosen not to take a plea if not for counsel's failure to properly advise him, no ineffective assistance can be shown). Further, given that the plea was actually completed, had an objection been raised regarding the "incomplete plea" at sentencing, such a motion would have been fruitless, making it more than reasonable that counsel chose not to object. Dkt. 7-10 at 3; *see also United States v. Tavarez*, 654 F. App'x 30, 32 (2d Cir. 2016). Therefore, when analyzing the counsels' conduct with the "strong presumption" that it falls within the range of reasonable, neither counsels' of actions were so inadequate as to deny Innocent his rights afforded by the Sixth Amendment. *See Strickland*, 466 U.S. at 687, 689.

Like his earlier claims, Innocent's *Strickland* claim was decided on the merits by the state courts, is exhausted and is properly presented here for substantive review. It also meets the same

fate. The determination by the state courts was most certainly not an unreasonable application of controlling federal law. *Williams*, 529 U.S. at 405-06. The decision denying Innocent's Strickland claim, consequently, is entitled to AEDPA deference and there has been absolutely no showing sufficient to overcome it. *Drake*, 553 F.3d at 239. The writ cannot issue on this ground either.

## Conclusion

In line with the foregoing, the writ of *habeas corpus* is denied, and the petition is dismissed.

Since Innocent has not made a substantial showing of the denial of a constitutional right, a certificate of appealability shall not issue. *See* 28 U.S.C. § 2253(c)(2).

The Court certifies, pursuant to 28 U.S.C. § 1915(a), that any appeal from this Memorandum and Order would not be taken in good faith and, therefore, *in forma pauperis* status is denied for the purpose of any appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45, 82 S.Ct 917, 8 L.Ed.2d 21 (1962).

The Clerk of Court is directed to mail a copy of this Memorandum and Order to petitioner, to enter judgment accordingly, and to close this case.

So Ordered.
Dated: Brooklyn, New York
July 14, 2020

*/s/ Eric N. Vitaliano*
ERIC N. VITALIANO
United States District Judge